IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JALEN BENSON,                )
                             )
         Plaintiff,          )
   v.                        )   C.A. No. 16-196-LPS
                             )
AMGUARD INSURANCE COMPANY,   )
                             )
         Defendant.          )

John S. Spadaro, JOHN SHEEHAN SPADARO, LLC, Smyrna, DE

   Attorney for Plaintiff.


Thaddeus J. Weaver, DILWORTH PAXSON LLP, Wilmington, DE

   Attorney for Defendant.

**MEMORANDUM OPINION**

June 21, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are: (i) Defendant Amguard Insurance Company's ("Defendant" or "Amguard") motion to dismiss Plaintiff Jalen Benson's ("Plaintiff" or "Benson") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss"); and (ii) Defendant's motion to strike portions of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(f) ("Motion to Strike"). (D.I. 4) For the reasons set forth below, the Court will grant Defendant's Motion to Dismiss and will grant in part and deny in part Defendant's Motion to Strike.

## I. BACKGROUND[1]

Plaintiff was employed as a "bagger" at Seaford Ice, Inc., ("Seaford Ice") in May 2015. (*See* D.I. 1-1 Ex. 1 ¶¶ 3, 8) "In that capacity, [Plaintiff's] job duties required him to bag ice" in Seaford Ice's bagging room. (*Id.* ¶¶ 8, 10) Ordinarily, ice would flow to the bagging room from the gantry room. (*See id.* ¶ 10) However, at times during "the normal course of operations . . . , the flow of ice . . . to the bagging room would . . . be interrupted." (*Id.* ¶ 13) "When such interruptions occurred, it was not unusual for an employee working in the bagging room to enter the gantry room to determine why the flow of ice had stopped." (*Id.*) Employees entering the gantry room would walk on a closed metal grate that formed part of the gantry room's floor surface. (*See id.* ¶ 12) The metal grate also covered "[a] large augur [that] turn[ed] beneath the floor of the gantry room." (*Id.*)

On May 28, 2015, the gantry room's metal grate was left open, and the augur was still

---

[1] This recitation is based, as it must be at this stage, on taking as true all well-pleaded factual allegations in the complaint.

1

turning. (*See id.* ¶ 18) Plaintiff "was working in the bagging room . . . when the flow of ice from the gantry room to the bagging room was interrupted." (*Id.* ¶ 17) Thus, as per customary practice (*see id.* ¶ 13), Plaintiff "entered the gantry room to determine why the ice flow had stopped" (*id.* ¶ 17). Unaware and unwarned of the open metal grate and the still-turning augur (*see id.* ¶ 18), Plaintiff "proceeded through the gantry room [and] . . . accidentally fell into the opening in the floor grate" (*id.* ¶ 19). "The still-turning augur caused . . . injury to [Plaintiff], resulting in [the] amputations of both of [Plaintiff's] legs, along with soft tissue injury and injury to [Plaintiff's] back." (*Id.*) As a result of his injuries, Plaintiff "was rendered totally disabled from work." (*Id.* ¶ 20)

Plaintiff submitted his workers' compensation claim to Defendant – Seaford Ice's insurer – on the same day he was injured. (*See id.* ¶¶ 5, 23-26) Defendant denied Plaintiff's claim on July 9, 2015. (*See id.* ¶¶ 26, 28) In its letter denying Plaintiff's claim, Defendant stated that Plaintiff was ineligible for benefits because "it appear[ed] that [Plaintiff] was not within the scope of his employment" at the time of his accident. (*Id.* ¶ 31) (internal quotation marks omitted)

Plaintiff and Defendant litigated the denial of Plaintiff's workers' compensation claim before the Delaware Industrial Accident Board ("IAB"). (*See id.* ¶¶ 16, 42) During the proceedings before the IAB, Defendant "abandoned" its argument that Plaintiff was not within the scope of his employment and instead argued "that [Plaintiff's] accident did not arise in the course of his employment." (*Id.* ¶ 39) (emphasis omitted) The IAB awarded Plaintiff workers' compensation benefits in October 2015. (*See id.* ¶ 42) In doing so, the IAB rejected Defendant's argument, finding "no evidence" that Plaintiff was "working outside the course of his

employment ... at the time of his ... accident." (*Id.*) (internal quotation marks omitted)

In the instant case, Plaintiff challenges Defendant's handling of his workers' compensation claim. (*See id.* ¶ 21) Specifically, Plaintiff claims that Defendant's conduct during the claims process and IAB proceedings "evinced a profound indifference to [Plaintiff's] contractual rights, statutory rights, and general well-being, ... caus[ing] [Plaintiff] egregious harm." (*Id.* ¶ 43) With respect to his contractual rights, in particular, Plaintiff alleges that Defendant acted in bad faith in arguing that Plaintiff's accident arose outside the course of his employment, because Seaford Ice neither officially nor unofficially barred employees from entering the gantry room. (*See id.* ¶¶ 13-16, 53)

Because of Defendant's allegedly wrongful conduct, Plaintiff filed suit against Defendant in Delaware Superior Court on February 29, 2016. (*See id.* at 1, 17) Plaintiff's complaint alleges the following causes of action: declaratory judgment (Count I); bad faith breach of contract (Count II); a violation of the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, § 2513(a) (Count III); and intentional or reckless infliction of emotional distress (Count IV). (*See id.* ¶¶ 48, 53, 56, 61)

On March 28, 2016, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (D.I. 1) Subsequently, on March 29, 2016, Defendant filed the instant Motion to Dismiss Counts I and III of Plaintiff's complaint and the instant Motion to Strike portions of Plaintiff's complaint. (D.I. 4)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiffs claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v.*

*Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike serve "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002); *see also Sepracor Inc. v. Dey, L.P.*, 2008 WL 4377570, at *2 (D. Del. Sept. 26, 2008). Granting a motion to strike is generally disfavored and may be considered "a drastic remedy to be resorted to only when required for the interests of justice." *Plaum v. Jefferson Pilot Fin. Ins. Co.*, 2004 WL 2980415, at *2 (E.D. Pa. Dec. 22, 2004). Thus, even if "the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted," unless the allegations have no possible relation to the controversy and will prejudice the adverse party. *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009) (internal quotation marks omitted); *McInerney*, 244 F. Supp. 2d at 402. Generally, a Rule 12(f) motion will be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[T]he courts should not tamper with the pleadings unless there is a strong reason for doing so.").

### III. DISCUSSION

#### A. Motion to Dismiss

Defendant challenges the adequacy of Counts I and III of Plaintiff's complaint. (*See* D.I. 4 at 1-5) In Defendant's view, neither Count I nor Count III states a claim upon which relief may

be granted. (*Id.*) The Court addresses both Counts in turn.

### 1. Declaratory Judgment (Count I)

In Count I of the complaint, Plaintiff requests declaratory relief "with respect to the timeliness, fairness, and reasonableness of [Defendant's] handling of [Plaintiff's] workers' compensation claim." (D.I. 1-1 Ex. 1 ¶ 47) Defendant argues that Count I should be dismissed because "the complaint only sets forth allegations as to the parties' purported *past* conduct, without articulating a need for . . . a declaration as regards the parties' *future* behavior or rights." (D.I. 4 at 4) (emphasis added) Defendant further argues that Plaintiff's claim for declaratory relief arises under federal law, which prohibits declaratory judgment actions that adjudicate past conduct. (*See* D.I. 7 at 3-4)

The Court agrees with Defendant that federal law governs Plaintiff's claim for declaratory relief. *See Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986) ("It is settled law that . . . the federal rules respecting declaratory judgment actions . . . apply in diversity cases."). As such, "the [F]ederal Declaratory Judgment Act [('Declaratory Judgment Act')] controls" the Court's analysis of Plaintiff's declaratory judgment claim. *Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 373 n.49 (Del. 2008); *see also 1100 Adams St. Condo. Ass'n v. Mt. Hawley Ins. Co.*, 2014 WL 5285466, at * 3 (D.N.J. Oct. 15, 2014) ("[I]t was irrelevant that the plaintiff did not invoke the [Declaratory Judgment Act] in the original state court action, since federal procedural law – here, the [Declaratory Judgment Act] – controlled the issue of whether the district court should exercise jurisdiction.").

Under the Declaratory Judgment Act, district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

could be sought." 28 U.S.C. § 2201(a) (2012). As evidenced by the "statute's textual commitment to discretion," district courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Such discretion, however, is not without limits. *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (listing requirements for declaratory judgment actions). The Third Circuit requires that a declaratory judgment action "have utility," *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995), and "be of significant practical help in ending the controversy," *Step-Saver Data Sys.*, 912 F.2d at 650 (internal quotation marks omitted). Thus, a declaratory judgment is generally appropriate "when the judgment . . . will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (internal quotation marks omitted). However, "[a] [d]eclaratory judgment is inappropriate" when it is brought "solely to adjudicate past conduct." *Corliss v. O'Brien*, 200 Fed. App'x 80, 84 (3d Cir. Sept. 20, 2006).

Here, Plaintiff has merely sought an adjudication of Defendant's past conduct – Defendant's denial of Plaintiff's claim and Defendant's conduct during the IAB proceedings. (*See* D.I. 1-1 Ex. 1 ¶ 42) At no point does Plaintiff allege that Defendant's conduct continues or is likely to continue in the future. Instead, Plaintiff admits that Defendant's allegedly wrongful conduct ended in October 2015, when the IAB awarded Plaintiff his workers' compensation benefits. (*See id.*) Thus, Plaintiff's declaratory judgment action lacks utility and, as such, fails to state a plausible claim for relief under the Declaratory Judgment Act. *See Travelers Ins. Co.*, 72 F.3d at 1155. To the extent it has it, the Court also exercises its discretion to dismiss the declaratory judgment claim, which would serve no useful purpose.

7

Accordingly, the Court will grant Defendant's motion to dismiss the declaratory judgment claim.

### 2. Delaware Consumer Fraud Act (Count III)

Plaintiff claims that Defendant violated the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, § 2513(a), by breaching the "promise of good faith and fair dealing" in handing Plaintiff's claims arising under its workers' compensation policy.[2] (D.I. 1-1 Ex. 1 ¶ 55a) Defendant moves to dismiss Plaintiff's claim on the ground that the Delaware Consumer Fraud Act "does not give rise to a private cause of action for complaints against insurance companies." (D.I. 4 at 2) (internal quotation marks omitted) The Court agrees with Defendant.

"[Section] 2513(a) of Delaware's Consumer Fraud Act is inapplicable to [a] private, non-administrative action." *Price v. State Farm Mut. Auto Ins. Co.*, 2013 WL 1213292, at *10 (Del. Super. Ct. Mar. 15, 2013), *aff'd*, 77 A.3d 272 (Del. 2013); *see also Christiana Care Health Servs., Inc. v. PMSLIC Ins. Co.*, 2015 WL 6675537, at *7 (D. Del. Nov. 2, 2015) ("[S]ection 2513(a) does not give rise to a private cause of action for complaints against insurance

---

[2]In relevant part, the Delaware Consumer Fraud Act provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

Del. Code Ann. tit. 6, § 2513(a) (2017).

8

companies."). Hence, private parties, such as Plaintiff, may not bring an action under § 2513(a).³

Plaintiff opposes this conclusion, arguing that *Price* is inapposite because it "contravened 25 years of Delaware precedent," "without ever acknowledging, much less analyzing" that precedent. (D.I. 6 at 14, 16; *see also id.* at 15 (citing cases)) Even assuming this is correct,⁴ Plaintiff has failed to state a claim under § 2513(a) because the complaint does not allege that Defendant's conduct occurred "as part of the sale, lease, or advertisement of the insurance policy." (D.I. 4 at 3 (internal quotation marks omitted); *see also Price*, 2013 WL 1213292, at *11 ("[Section] 2513(a) is inapposite because it protects consumers who are deceived while purchasing merchandise; it does not protect customers who . . . are seeking to receive a benefit of that purchase."))

Accordingly, the Court will grant Defendant's motion to dismiss the Delaware Consumer Fraud Act claim.

**B.     Motion to Strike**

Defendant moves to strike the last sentence of paragraph four in the complaint as well as the entirety of paragraphs 9 through 19. (*See* D.I. 4 at 5-7)

---

³Defendant further argues that claims brought under § 2513(a) "must be pled with particularity under" Federal Rule of Civil Procedure 9(b). (D.I. 4 at 2) Here, the Court has already concluded that the complaint fails to state a legally cognizable claim for relief. As such, "it follows that [the complaint] is also inadequately plead under the heightened pleading standards of Rule 9(b)." *Christiana Care Health Servs., Inc.*, 2015 WL 6675537, at *7.

⁴In *Christiana Care Health Services*, Judge Andrews discussed *Price* in the course of dismissing a similar allegation that an insurer violated § 2513(a) by mishandling a claim. In doing so, Judge Andrews noted the same precedent to which Plaintiff cites here. *See* 2015 WL 6675537, at *7 ("The Delaware Supreme Court recently affirmed [*Price*'s] holding, in the alternative, and *contra* the previous line of cases, that [§] 2513(a) does not give rise to a private cause of action for complaints against insurance companies.").

9

### 1. Paragraph 4

Defendant moves to strike the last sentence of paragraph 4 of Plaintiff's complaint, which states that "Amguard's ultimate corporate parent is Berkshire Hathaway, Inc., a multinational corporation best known for its billionaire chief executive, Warren Buffe[t]t" (D.I. 1-1 Ex. 1 ¶ 4). (*See* D.I. 4 at 6) Defendant contends that the references to "Berkshire Hathaway" and "Warren Buffett" are "immaterial" because neither is a defendant in the instant case. (*Id.*) Defendant further contends that the descriptions "multinational corporation" and "billionaire" "have no other purpose than to prejudice [D]efendant . . . by trying to contrast" Defendant's financial situation from that of Plaintiff. (*Id.*)

In his response, Plaintiff admits that the allegations "reflect [Defendant's] considerable wealth." (D.I. 6 at 13) Nevertheless, Plaintiff argues that the allegations are proper because Defendant's "wealth is relevant" to Plaintiff's claims, particularly Plaintiff's punitive damages claim. (*Id.*)

Although a ***defendant's*** financial well-being may be considered in assessing punitive damages, neither Berkshire Hathaway nor Warren Buffett is a defendant. Neither Berkshire Hathaway's nor Warren Buffett's wealth is indicative of Defendant's financial well-being, since Defendant is a distinct legal entity. *See Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 514 (3d Cir. 1971) ("A duly organized business corporation enjoys an identity separate and apart from its stockholders, directors, and officers."); *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1040 (Del. Ch. 2006) (noting that Delaware law recognizes "the presumptively separate legal dignities of parent and subsidiary"). Thus, the references to Berkshire Hathaway and Warren Buffett are irrelevant, have no possible relation to the matters in dispute, and could

prejudice Defendant.

Accordingly, the Court will grant Defendant's motion to strike the last sentence of paragraph four of the complaint.

### 2. Paragraphs 9 to 19

The allegations in paragraphs 9 through 19 generally relate to Plaintiff's lack of job training and customary practices at the Seaford Ice plant. (*See* D.I. 1-1 Ex. 1 ¶¶ 9-19) Portions of the allegations in those paragraphs also discuss Plaintiff's accident and resulting injuries. (*See id.* ¶¶ 17, 19)

Defendant argues that the allegations in paragraphs 9 through 19 are immaterial because they "are reminiscent of [allegations] that might . . . be used in a tort claim." (D.I. 4 at 6) In Defendant's view, "[r]etaining [such] allegations . . . would result in confusing the legal and factual issues [by] . . . improperly suggest[ing] that [Defendant] was responsible for the specific conditions in the factory." (*Id.* at 7)

The Court disagrees. The allegations at issue may allow a reasonable factfinder to infer that Plaintiff "was involved in no unauthorized activity of any kind at the time he lost his legs." (D.I. 6 at 12; *see also* D.I. 1-1 Ex. 1 ¶¶ 9-19) Such an inference would conflict with Defendant's previous assertions that Plaintiff was acting outside the scope and course of his employment at the time of his accident. (*See* D.I. 1-1 Ex. 1 ¶¶ 31, 39; D.I. 6 at 12) Thus, contrary to Defendant's position, the allegations in paragraphs 9 through 19 are not immaterial but, instead, may have significant bearing "on the reasonableness of [Defendant's] claims-handling." (D.I. 6 at 12)

Accordingly, the Court will deny Defendant's motion to strike paragraphs 9 through 19 of

the complaint.

## IV. CONCLUSION

For foregoing reasons, the Court will grant Defendant's Motion to Dismiss and will grant in part and deny in part Defendant's Motion to Strike. An appropriate Order follows.